Adrienne Conrad (SBN 238170)
C. Todd Van Dyke* (Georgia Bar No. 723420)
Sapna K. Jain* (Georgia Bar No. 680949)
**JACKSON LEWIS P.C.**
225 Broadway, Suite 2000
San Diego, California 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
adrienne.conrad@jacksonlewis.com
todd.vandyke@jacksonlewis.com
sapna.jain@jacksonlewis.com
**pro hac vice applications pending*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENTIVA HEALTH SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MISSION HEALTHCARE HOLDINGS, INC., MISSION HEALTHCARE SERVICES, INC., and KATHRYN MOHNEY,<br><br>Defendants. | Case No.: 19cv812 JM(BLM)<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff Gentiva Health Services, Inc. ("Gentiva" or the "Company") brings this Complaint for injunctive relief and monetary damages against Defendants Mission Healthcare Holdings, Inc. and Mission Healthcare Services, Inc. ("Mission Defendants" or "Mission Healthcare") for intentional interference with contractual relations and prospective advantage and against Defendant Kathyrn Mohney ("Mohney"), Mission Healthcare's Vice President-Hospice, for breach of contract.

/ / /

## INTRODUCTION

1. This case arises out of Mission Defendants' employment of Paul VerHoeve, Gentiva's former President, West Region and Mission Healthcare's current Chief Executive Officer.[1] Mission Healthcare is a direct competitor of Gentiva and is intentionally interfering with Gentiva's agreement with VerHoeve, which includes non-competition and non-solicitation covenants.

2. By employing VerHoeve as Chief Executive Officer and allowing him to directly and indirectly compete and solicit employees, Mission Defendants are intentionally interfering with contractual relations and harming Gentiva's economic relationships with third parties.

3. Gentiva is a home health and hospice healthcare company headquartered in Atlanta, Georgia. While employed by Gentiva, VerHoeve was responsible for the operation of over 120 locations throughout an eight-state region, spanning from Louisiana to California, with profit and loss responsibility for several hundred million dollars.

4. In addition, this case also arises out of Mission Defendants' employment of Kathryn Mohney, Gentiva's former Executive Director in its San Diego, California office. In direct contravention of her contractual obligations, Defendant Mohney has solicited and continues to solicit employees from Gentiva's San Diego office. Since Defendant Mohney resigned from Gentiva in mid-March 2019, nine other Gentiva employees have gone to work for Mission Defendants. She is taking these inappropriate actions in direct violation of her agreement with Gentiva.

5. For these reasons, as more fully discussed below, Gentiva is seeking injunctive relief, monetary damages, and attorneys' fees.

/ / /

---

[1] Gentiva also filed an action in the United States District Court for the Northern District of Georgia against Paul VerHoeve on April 29, 2019. *See Gentiva Health Services, Inc. v. Paul VerHoeve*, United States District Court for the Northern District of Georgia, Civil Action File No. 1:19-CV-01912-MLB.

## THE PARTIES

6. Gentiva, which operates under the name Kindred at Home, provides a wide range of healthcare services, including home health and hospice care, to patients throughout the country. Home health consists of direct home nursing and therapy services operations, including specialty programs. Hospice serves terminally ill patients and their families.

7. Gentiva is a Delaware corporation with its principal place of business in Georgia.

8. Defendant Mission Healthcare Holdings, Inc. is a California corporation with its principal place of business in California.

9. Defendant Mission Healthcare Services, Inc. is a California corporation with its principal place of business in California.

10. Defendant Kathryn Mohney is a citizen of California and resides at 10526 Don Pico Road, Spring Valley, California 91978.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over Gentiva's state law claim pursuant to 28 U.S.C. § 1367 because it arises out of the same operative facts as its federal claim.

12. Personal jurisdiction and venue are proper in this Court because all Defendants are citizens of California.

## FACTS

### Mission Defendants' Employment of VerHoeve

13. VerHoeve was the President, West Region for Gentiva, a healthcare company that specializes in providing home health and hospice services. He was responsible for over 120 locations throughout the West Region, which consists of Louisiana, Arkansas, Oklahoma, Texas, New Mexico, Arizona, Nevada, and California. VerHoeve had direct

responsibility for an executive leadership team covering operations, sales, clinical, finance, and human resources. He was also responsible for consumer marketing activities.

14. Mission Healthcare is a direct competitor of Gentiva, and VerHoeve is violating his non-competition covenant by virtue of being employed as its Chief Executive Officer.

15. Mission Healthcare's website prominently touts VerHoeve's experience as an executive for Gentiva, which in the recent past was a subsidiary of Kindred Healthcare: "Prior to his appointment as CEO at Mission Healthcare, [VerHoeve] was President of the West Region with Louisville, Kentucky-based Kindred Healthcare, one of the largest post-acute care systems in the country. In his role with Kindred Healthcare, he was responsible for 120 locations across 10 states with 500M[M] in annual revenues." Mission Leaders, Paul VerHoeve, http://homewithmission.com/about-us/our-team/member/paul-verhoeve/ (last visited May 1, 2019).

16. On April 23, 2019, Mission Healthcare announced a new private equity investment in the company, crediting the new leadership of VerHoeve. As one of the principals of the investor put it, "Mission Healthcare is poised for growth and has significant upside for both its home health and hospice services. Under the leadership of new CEO Paul Ver Hoeve II, the company is well-positioned to scale operations and drive performance improvement." HCAP invests in Mission Healthcare, PE Hub (2019), https://www.pehub.com/2019/04/hcap-invests-in-mission-healthcare/ (last visited May 1, 2019).

17. Upon information and belief, Mission Defendants had knowledge of VerHoeve's contract with Gentiva, including VerHoeve's non-competition and non-solicitation covenants.

18. VerHoeve agreed not to compete against Gentiva by performing the same or substantially the same job duties on behalf of a competitor anywhere in the United States within the period of twelve (12) months after his separation.

/ / /

19. Mission Defendants' employment of VerHoeve, despite their knowledge of his non-competition covenant, disrupted Gentiva's contractual relationship with VerHoeve, resulting in the actual breach of VerHoeve's agreement with Gentiva.

20. Additionally, Mission Defendants have systematically raided Gentiva's San Diego, California office after VerHoeve joined Mission Healthcare.

21. Mission Defendants hired Medical Director Dr. Enoch Wang in April 2019 (just last week), Executive Director Defendant Kathryn ("Kate") Mohney in March 2019, Hospice Specialist Toni Abad in April 2019, Clinical Practice Manager Sarah Breckner in April 2019, LVN Jenny Mariano in April 2019, Hospice Aide Mayra Meza in April 2019, Admissions Nurse Aglika Mitchem in April 2019, Hospice RN Maria Parubrub in April 2019, LVN Sibonnet Finnegan in April 2019 (starting with Mission Healthcare in May), and Aide Nayely Molina in April 2019 (starting with Mission Healthcare in May).

22. These employees would not have resigned from Gentiva if Mission Defendants had not intentionally interfered with VerHoeve's non-competition covenant. Moreover, Gentiva also believes that while working for Mission Defendants, VerHoeve has breached his non-solicitation covenant by, directly or indirectly, soliciting some or all of these employees.

23. VerHoeve solicited another Gentiva employee, Jackie Hughes, who is the AVP- Finance for the West Region. VerHoeve spoke to Ms. Hughes and, in the context of a discussion about Ms. Hughes' job opportunities, told her, "You know, I have an open CFO position [at Mission Healthcare]." He also told her what the salary would be.

24. Gentiva also believes that Mission Defendants unsuccessfully attempted to recruit other Gentiva employees, including Hospice RN Rowena Culas and LVN Steve Sandoval. Gentiva had to give Ms. Culas and Mr. Sandoval additional pay to keep them.

25. As a result of Mission Defendants' intentional interference with contractual relations by employing VerHoeve as Chief Executive Officer and allowing him to directly or indirectly solicit Gentiva's employees, Gentiva has suffered irreparable harm and is entitled to injunctive relief and monetary damages for any breach.

26. Gentiva has economic relationships with third parties, including its customers such as hospitals and home health facilities.

27. Mission Defendants are aware of Gentiva's relationships with its customers and other third parties.

28. Mission Defendants' goal in hiring VerHoeve was to expand Mission Healthcare's business and operations within the same region VerHoeve was responsible for while at Gentiva. They intend to do so by disrupting Gentiva's business and soliciting Gentiva's customers and employees.

29. Gentiva has already seen a stark economic impact on its patient admission numbers as a result of VerHoeve's competition, along with his and Defendant Mohney's solicitation of employees.

**Defendant Mohney's Retention and Protective Covenants Agreement**

30. Defendant Mohney was the Executive Director for Gentiva's San Diego office. As Executive Director, Defendant Mohney was responsible for the overall operation at the San Diego office, including, but not limited to, employing qualified hospice personnel and providing hospice services; delegating and coordinating hospice personnel evaluations; establishing and maintaining standards of high quality care and customer service in compliance with federal and state regulations and guidelines; meeting growth and development targets; and actively establishing and maintaining market acceptance and allegiance throughout the local service area.

31. In this role, Defendant Mohney interacted with the employees and independent contractors in the San Diego office on a daily basis, building close relationships.

32. On August 30, 2018, Defendant Mohney signed the Retention and Protective Covenants Agreement. This Retention and Protective Covenants Agreement is attached as Exhibit "A."

33. In Section 4(d)(ii) of the Retention and Protective Covenants Agreement, Defendant Mohney agreed not to solicit to hire or employ any of Gentiva's employees:

**(ii)** **Nonsolicitation of Employees.** Employee further agrees that, during the Non-Solicit Period, Employee shall not solicit to hire or employ any Covered Employee, nor will Employee solicit or induce any Covered Employee to leave his or her employment, or to terminate or violate any employment agreement, nonsolicitation agreement, confidentiality agreement, nondisclosure agreement, or other restrictive covenant with Company.

34. In Section 4(d)(iii)[2] of the Retention and Protective Covenants Agreement, Defendant Mohney agreed to a tolling provision that states that the running of the Non-Solicit Period shall be tolled for any period of time during which Employee is in violation of same.

35. In Section 4(d)(ii) of the Retention and Protective Covenants Agreement, Defendant Mohney agreed that Gentiva is entitled to injunctive relief and monetary damages for any breach:

**(ii)** Because Employee shall receive and have access to Company's and its Affiliates' Confidential Information, and be exposed to their business relationships, the parties agree that Company and its Affiliates will be irreparably harmed by, and money damages will be an inadequate remedy for, any breach of this Section 4. Therefore, in the event of any such breach or threatened breach by Employee, Company, its Affiliates, and their respective successors or assigns may, in addition to monetary damages and any other rights and remedies, obtain specific performance and injunctive or other relief in order to enforce, or prevent any violations of, the provisions of this Section 4.

**Defendant Mohney's Resignation and Harm to Gentiva**

36. Defendant Mohney resigned as Gentiva's Executive Director on March 12, 2019.

[2] The Retention and Protective Covenants Agreement contains two sections entitled 4(d). The section titled Enforcement; Remedies; Tolling is the second Section 4(d).

37. Upon information and belief, Defendant Mohney began working for Mission Defendants in March 2019 as Vice President-Hospice.

38. In the six weeks after Defendant Mohney resigned from Gentiva, Mission Defendants hired nine other employees from Gentiva's San Diego office.

39. Gentiva believes that due to the significant number of employees resigning from Gentiva to work for Mission Defendants, Defendant Mohney is soliciting employees, directly or indirectly, in violation of her employee non-solicitation covenant.

40. It is not just the number of employees being lost but also the quality of employee. For example, one of the employees, Toni Abad, was a Hospice Specialist, which is a sales position. She was one of Gentiva's top sales employees—not just in California—but in the entire country. She was the face of the Company in the San Diego market. She was part of the sales team that promoted Gentiva's hospice services to the local healthcare community and developed key business relationships. She was regularly in the community educating people and developing relationships with healthcare professionals. She made phone calls and conducted presentations to potential referral sources. She created strategic marketing plans. She worked side-by-side with the clinical and operational team to promote Gentiva's hospice services and solidify the highest quality patient care.

41. Since Abad's departure, Gentiva has seen a stark decline in its patient admissions in the last month, as compared to the last six months.

42. In sum, Mission Defendants' employment of VerHoeve and his solicitation of employees as Chief Executive Officer interfere with VerHoeve's contractual obligations with Gentiva. Further, Defendant Mohney's employment with Mission Defendants and solicitation of Gentiva employees are in breach of her contractual agreement and have caused Gentiva significant harm.

/ / /

/ / /

/ / /

**COUNT I**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS (MISSION DEFENDANTS)**

43. The allegations of the foregoing paragraphs are incorporated by reference with the same force and effect as if set forth in full below.

44. Defendant Mohney and VerHoeve knowingly and voluntarily entered into legally binding and enforceable agreements for which they were provided valuable consideration.

45. Gentiva has performed all conditions, covenants, and promises required of it under the terms of the agreements.

46. The non-competition, employee non-solicitation, and non-disclosure covenants in VerHoeve's Amended Agreement are enforceable, reasonable, and necessary to protect Gentiva's legitimate business interests pursuant to Georgia law, which is the governing law for the Amended Agreement. The employee non-solicitation covenant in Defendant Mohney's Retention and Protective Covenants Agreement is enforceable, reasonable, and necessary to protect Gentiva's legitimate business interests.

47. Mission Defendants were aware of Defendant Mohney's and VerHoeve's agreements with Gentiva and have permitted and/or condoned their violations of them.

48. The non-competition, employee non-solicitation, non-disclosure, and return of property covenants in the Amended Agreement are justified by Gentiva's legitimate business interests in:

(a) protecting its confidential information and trade secrets;

(b) protecting its client relationships, payor relationships, referral source relationships and other competitive advantages in the marketplace; and

(c) promoting productivity and maintaining competent and specialized personnel.

49. The employee non-solicitation covenant in Defendant Mohney's agreement also protects confidential information, trade secrets, productivity and maintains competent and specialized personnel.

50. As a proximate result of Defendant Mohney's and VerHoeve's breach of their agreements, Gentiva has suffered and will continue to suffer injuries and harm unless this Court enjoins Mission Defendants and Defendant Mohney from tortiously interfering and continuing breaches of the Retention and Protective Covenants Agreement.

51. Mission Defendants should be enjoined from allowing VerHoeve to provide services to Mission Healthcare or any other business that are the same as or substantially similar to the services he provided to Gentiva as President, West Region. Mission Defendants and Defendant Mohney should be enjoined from, directly or indirectly, soliciting, luring away or attempting to hire away any of Gentiva's employees and independent contractors.

52. As a proximate result of the above described conduct, Gentiva has also suffered monetary damages in excess of $75,000 and in an amount to be determined at trial.

**COUNT II**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ADVANTAGE (MISSION DEFENDANTS)**

53. The allegations of the foregoing paragraphs are incorporated by reference with the same force and effect as if set forth in full below.

54. Gentiva has economic relationships with third parties, including its customers such as hospitals and home health facilities.

55. Mission Defendants are aware of Gentiva's relationships with its customers and other third parties.

56. Mission Defendants' goal in hiring Defendant Mohney and VerHoeve was to expand Mission Healthcare's business and operations in the West region. Mission Defendants intend to do so by disrupting Gentiva's business and soliciting Gentiva's

customers and employees. They are doing so wrongfully by permitting and/or condoning Defendant Mohney's and VerHoeve's violations of their agreements.

57. Gentiva has already seen a stark decrease in its patient admission numbers as a result of VerHoeve and Defendant Mohney's solicitation of employees.

58. As a proximate result of the above described conduct, Gentiva has suffered monetary damages in excess of $75,000 and in an amount to be determined at trial.

**COUNT III**

**BREACH OF CONTRACT**
**(MOHNEY)**

59. The allegations of the foregoing paragraphs are incorporated by reference with the same force and effect as if set forth in full below.

60. Defendant Mohney knowingly and voluntarily entered into a legally binding and enforceable Retention and Protective Covenants Agreement for which she was provided valuable consideration.

61. Gentiva has performed all conditions, covenants, and promises required of it under the terms of the Retention and Protective Covenants Agreement.

62. The employee non-solicitation covenant in the Retention and Protective Covenants Agreement is reasonable and enforceable pursuant to California statutes and case law.

63. The employee non-solicitation covenant in the Retention and Protective Covenants Agreement is reasonable and necessary to protect Gentiva's legitimate business interests.

64. The employee non-solicitation covenant in the Retention and Protective Covenants Agreement is justified by Gentiva's legitimate business interests in promoting productivity and maintaining competent and specialized personnel.

65. As a proximate result of Defendant Mohney's breach of the Retention and Protective Covenants Agreement, Gentiva has suffered and will continue to suffer injuries and harm unless this Court enjoins Defendant Mohney, and anyone acting in concert with

her, from continuing to breach the Retention and Protective Covenants Agreement and orders them to comply with it.

66. Defendant Mohney should be enjoined from, directly or indirectly, soliciting, luring away, or attempting to hire away any of Gentiva's employees and independent contractors.

67. The time period for the non-solicitation covenant in the Retention and Protective Covenants Agreement should be tolled during the pendency of this lawsuit.

68. As a proximate result of the above described conduct, Gentiva has suffered monetary damages in excess of $75,000 and in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts and conduct complained of in Counts I through III, Gentiva demands judgment in its favor and against Mission Defendants and Defendant Mohney for injunctive relief and damages, and respectfully requests the following:

(1) A trial by jury;

(2) An injunction that enjoins Defendant Mohney, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Mission Defendants from soliciting, luring, or attempting to hire away any employees or independent contractors of Gentiva, and an injunction that prohibits Mission Defendants from tortiously interfering with VerHoeve's or Money's agreements;

(3) Actual monetary damages incurred by Gentiva as a result of Mission Defendants' wrongful conduct;

(4) Actual monetary damages incurred by Gentiva as a result of Defendant Mohney's wrongful conduct;

(5) Punitive damages;

(6) Attorneys' fees; and

/ / /

/ / /

(7) Any other relief that the Court deems appropriate and proper.

DATED: May 21, 2019

JACKSON LEWIS P.C.

By: /s/ Adrienne L. Conrad

Adrienne L. Conrad (SBN 318779)
C. Todd Van Dyke
Sapna K. Jain
ATTORNEYS FOR PLAINTIFF